IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Ladarreus Torrell King,** )<br>  Petitioner, )<br> )<br>v.  )<br> )<br>**J. Andrews,**  )<br>  Respondent. ) | 1:19cv1347 (CMH/TCB) |

MEMORANDUM OPINION

Federal inmate Ladarreus Torrell King ("King" or "petitioner") filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus alleging that the Bureau of Prisons ("BOP") violated his due process rights by failing to provide him with a copy of a Discipline Hearing Officer's ("DHO") report in a timely fashion following a hearing, which resulted in his administrative appeal being dismissed. On October 9, 2020, respondent filed a motion to dismiss [Dkt. No. 9], with a brief in support and exhibits, and provided petitioner with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 9-1].

On October 21, 2020, King moved for an extension of time due to a modified lockdown at his facility due to COVID-19, which limited his access to the law library. [Dkt. No. 12]. The motion was granted by Order dated October 27, 2020, which made King's response due on or before December 11, 2020. [Dkt. No. 12]. King filed a second motion for extension of time on December 11, 2020 due to the COVID-19 modified lockdown and his inability to access the law library. The motion was granted by Order dated December 14, 2020 and made King's response due on or before January 28, 2021. [Dkt. Nos. 14, 15]. King filed a third motion for an extension on February 2, 2021 stating it was necessary due to the COVID-19 modified lockdown, which was granted by Order dated February 26, 2021 and made King's response due on or before April 12, 2021. [Dkt. Nos. 16, 17]. On April 7, 2021, King filed a fourth motion for extension of time

and again set forth that he could not access the law library due to a modified COVID-19 lockdown. [Dkt. No. 18]. The Court granted the motion on April 14, 2021, which made King's response due on or before May 29, 2021. [Dkt. No. 19]. King has had over seven months to respond. For the reasons stated below, respondent's motion to dismiss must be granted, and the underlying petition dismissed.

## I. Statement of Facts

1. King is currently incarcerated at the FCC in Petersburg, Virginia, and is serving a total term of imprisonment of 96 months incarceration, with a projected release date of December 17, 2022, via Good Conduct Time release. [Dkt. 10-1 at ¶ 4].

2. On June 1, 2019, King was served with an incident report charging him with a violation of BOP disciplinary Code 104, possessing a dangerous weapon. [Id. at 8-10]. The incident report stated:

> On May 31, 2019, at 18:42 I conducted a search of C04-071 in C-north. During the search I recovered a homemade weapon (shank) approximately 8 inches long, with black string wrapped round a metal rod that had been sharpened to a point. The weapon was retrieved underneath the bottom locker and was attached to dental floss and a magnate [sic]. Inmate King (32852-057) is assigned to C04-071L and the weapon was recovered under the bottom right locker which he claimed was his locker. Inmate Jackson (53352-083) is also assigned to cell 71 bed assignment C04-071U. I notified the Operations LT and a Compound officer was given the weapon.

[Id. at 8].

3. During the investigation, King was advised of his right to remain silent at all stages of the discipline process. When questioned about the incident, King stated "It's not mine. I don't know anything about a knife. I been here over two years and I haven't had a shot. Over half of these Officers don't even know me because I don't get into anything. Inmate King ... displayed a positive attitude toward the investigator." [Id. at ¶ 6].

4. On June 3, 2019 at 16:35, King appeared before the Unit Discipline Committee ("UDC") to answer the charge. King stated to the UDC that "[i]t was not my knife." [Id. at 9]. Due to the severity of the incident, the matter was referred to the disciplinary hearing officer ("DHO") for further hearing. [Id. at ¶ 7].

5. King was given a Notice of Discipline Hearing before the DHO and advised of his rights at the hearing on June 3, 2019 at 4:35 p.m. [Id. at 14]. Specifically, king was advised of the following: his right to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO; to have a staff representative; to call witnesses to testify on his behalf and present documentary evidence; to present a statement or remain silent; to be present throughout the disciplinary hearing; to be advised of the DHO's decision and disposition in writing; and the right to appeal the DHO's decision. King acknowledged being advised of these rights on June 3, 2019. [Id. at ¶ 8; 16].

6. On July 10, 2019, King appeared before the DHO and waived his right to present witnesses on his behalf or have a staff representative appear on his behalf. [Id. at ¶ 9; 18].

7. During the DHO hearing, King acknowledged he had received his copy of the incident report and that he understood his rights in the DHO hearing. He did not raise any concerns with the discipline process at this time, and he made the following initial statement: "It is not my knife. I have been here for over 2 years. I don't need a knife. I have been in that cell for over two years." [Id. at ¶ 10; 18].

8. The DHO found King guilty of violating Code 104, possessing a dangerous weapon. The DHO considered the incident report and the detailed report by the reporting

3

staff member, King's denials, and his admission that the locker in question was his locker. Based upon the greater weight of the evidence, the DHO found King committed the prohibited act as charged. [Id. at ¶ 11; 20].

9. The DHO outlined the specific evidence relied on to support his findings, in Section V of the DHO Report. She considered King's denial of the charge and his subsequent version of the incident, but was not persuaded by his testimony. The DHO recited the narrative from the Incident Report, and explained that King provided no plausible story nor additional evidence to prove that the contraband was not his. Additionally, he admitted that the locker under which it was found was his. The DHO pointed out that King had access to the materials for the weapon and she found King's explanation that he had "no need" for a knife was also unpersuasive to the DHO. Thus, based upon the greater weight of the evidence, the DHO found King to have committed the prohibited act a charged. [Id. at ¶ 12; 20].

10. The DHO imposed the following administrative sanctions against King for the disciplinary infraction: (1) disallowance of 41 days of good conduct time ("GCT"); (2) 30 days disciplinary segregation, (3) 6 month loss of commissary, and (4) 4 months loss of e-mail privileges. [Id. at ¶ 13; 20].

11. In imposing these sanctions, the DHO reasoned that

The behavior on the part of any inmate to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. Possession of a weapon/sharpened instrument and possession of anything not authorized will not be tolerated in the correctional environment. It can have extremely serious repercussions for both staff and inmates since it tends to result in further disruptive and violent behavior.

[Id. at ¶ 14; 20].

12. The DHO completed and signed the DHO Report on February 7, 2020 [Id. at ¶ 15; 21] and it was delivered to King on June 30, 2020, at 12:00 PM. [Id. at 21]. King was notified that he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty calendar days of receiving the DHO report. [Id. at ¶ 16; 21].

## II. Standard of Review

A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed declaration and portions of the disciplinary hearing record, his motion will be construed as one for summary judgment.[1]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider

---

[1] In support of his Motion for Summary Judgment, Respondent submitted: (1) the Declaration of LaTisha Allen, Legal Assistant at FCC-Petersburg, (Dkt. No. 10-1); (2) an Incident Report (id. at 8-10); (3) a Notice of Discipline Hearing Before the DHO form (id. at 14); (4) an Inmate Rights at Discipline Hearing form (id. at 16); and (5) a DHO Report (id. at 18-21).

the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold. Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

To obtain habeas relief under § 2241, a petitioner must demonstrate that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner alleges the DHO violated his due process rights by failing to provide him with a copy of the DHO report in a timely fashion following the hearing. King focuses his arguments on the BOP's delay in providing him the DHO report within the timeline articulated by the agency's rules and regulations negates King opportunity to challenge the loss of 41 days of GCT; being placed in disciplinary segregation for 30 days; six-month loss of commissary privileges; and four-month loss of e-mail privileges.

King's hearing was on July 10, 2019, and subsequent to that hearing he filed an appeal to Regional Administrator on July 31, 2019 asserting that the DHO had violated his due process rights because she had failed to provide him with a copy of the DHO report within 15 days. [Dkt. No. 1-2 at 2]. The Regional Administrator rejected his appeal on August 26, 2019 because it had not included a DHO report. [Dkt. No. 1-3 at 2]. King filed an appeal from the Regional

6

Administrator's decision to the Central Office Administration on August 29, 2019. [Dkt. No. 1-4 at 2]. On September 20, 2019, the Central Office rejected the appeal noting it concurred with the decision of the Regional Administrator. [Dkt. No. 1-5 at 2].

The BOP's failure to abide by its internal rules, however, does not give rise to a legitimate claim for habeas relief. See Mendoza v. Tamez, 451 F. Appx 715, 717-18 (4th Cir. 2011) ("Prison regulations ... create liberty interests only when they protect inmates from atypical or significant hardship ... in relation to the ordinary incidents of prison life.  Late notice of a disciplinary charge does not represent such a hardship.") (internal citation and quotations omitted); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."). Although it is undisputed that King did not receive the DHO report within the timeline articulated by BOP policies, this noncompliance, standing alone, does not constitute a violation of due process.

Moreover, the BOP delivered a copy of the DHO's report to King on June 30, 2020 and informed King that he had twenty days to file his administrative appeal. King, therefore, received the relief to which he was entitled — a copy of the DHO report and the ability to appeal the DHO's decision. As courts have recognized, with respect to a claim that an inmate did not receive the DHO Report, such a claim is rendered moot if the inmate receives the report "after filing" an action. Shahan v. Ormond, No. 3:18cv200, 2018 U.S. Dist. LEXIS 214149, at *14-15 (E.D. Va. Dec. 19, 2018) (E.D. Va. Dec. 19, 2018), aff'd, 778 F. App'x 217 (4th Cir. 2019); see also Patterson v. Bolster, No. 3:18cv854, 2020 U.S. Dist. LEXIS 19857, *14 (E.D. Va. Jan. 31, 2020); Ogburn v. Bolster, No. 2:18cv691, 2019 U.S. Dist. LEXIS 161096, *28 (E.D. Va. Aug. 12, 2019), adopted by, 2019 U.S. Dist. LEXIS 161042 (E.D. Va. Sept. 18, 2019). King's claim has no merit.

In the context of an inmate's delayed receipt of a DHO's report, courts have held that inmates do not suffer any prejudice when they receive the report months after the hearing and that such a multi-month delay does not in and of itself constitute a due process violation. See, e.g., Griffin v. Ebbert, 640 F. Appx 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under Wolff"). Indeed, "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." Consolidation Coal Co. v. Borda, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). To be sure, King was not denied a right to appeal because once he received the DHO report, his window to appeal the DHO's findings opened. Consequently, King can establish no prejudice with regard to the delay in receiving the DHO's report. See Piggie v. Cotton, 342 F.3d 660, 678 (7th Cir. 2003) (dismissing claims related to a disciplinary hearing because petitioner failed to establish prejudiced).

King has a protected liberty interest in vested GCT, see, e.g., Sciolino v. City of Newport News, 480 F.3d 642, 653 n.9 (4th Cir. 2007), and that accords him the following amount of process when revocation of that GCT occurs:

> (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action.

Russell v. Wilson, No. 2:15cv51, 2015 U.S. Dist. LEXIS 95063, *13-14 (E.D. Va. June 17, 2015) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)), adopted by, No. 2:15cv51, 2015 U.S. Dist. LEXIS 94751, *1 (E.D. Va. July 20, 2015).[2]

The record demonstrates, and King does not dispute, that he received notice of the DHO hearing and his rights on June 3, 2019, over a month before his hearing took place on July 10, 2019; that he did not seek to call any witnesses; and that he did not request the assistance of a staff member. King made a statement at the hearing denying the weapon was his but presented no other evidence. King makes no claim that the DHO was bias in any way, and he was given a written explanation in the form of the DHO report.

Due process also requires that some evidence must support "the decision by the prison disciplinary board to revoke" GCT. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) (emphasis supplied). Hill emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (citations omitted). The DHO's report is supported by substantial evidence, and therefore satisfies due process. Id. In sum, with regard to the recognized liberty interest in GCT, the record establishes King was not denied due process. While King has expressly averred that he is challenging only the untimely provision of the DHO report, and not the conviction reflected in the DHO report, the record indicates there was no due process violation.

---

[2] Petitioner has no liberty interest in the six-month loss of commissary and four-month loss of e-mail privileges. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"). Further, being placed in "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472, 486 (1995); see, e.g., Mentzos v. Bureau of Prisons, 3:19CV450, 2020 U.S. Dist. LEXIS 173686, *14 (E.D. Va. Sept. 22, 2020) (federal inmate did have a protected liberty interest in his placement in disciplinary segregation, loss of phone use, loss of email, or loss of commissary use) (citing Gaston, 946 F.2d at 343).

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 9] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this __9th__ day of __June__ 2021.

Alexandria, Virginia

                                                                                    /s/  
                                                              Rossie D. Alston, Jr.  
                                                              United States District Judge